### Franklin Dowdell v. The State.

No. 5219.    Decided June 18, 1919.

**1.—Final Sentence—Practice on Appeal.**

Where, the record on appeal failed to show final sentence, the appeal must be dismissed. However, this defect having been remedied the case is heard on its merits.

**2.—Same—Theft of Hogs—Circumstantial Evidence—Insufficiency of the Evidence.**

Where, upon trial of theft of hogs, the identification of the alleged stolen property was insufficient, and the defendant's claim was that the alleged hogs belonged to his wife, and the evidence was otherwise insufficient to sustain the conviction, the judgment is reversed and the cause remanded.

Appeal from the District Court of Hardin. Tried below before the Hon. J. Llewellyn.

Appeal from a conviction of theft of hogs; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*T. E. Welch, S. D. Tant* and *Bryant A. Coe* for appellant.—On question of insufficiency of the evidence: Beach v. State, 11 S. W. Rep., 832; Bishop v. State, 25 id., 25; Shelby v. State, 42 id., 306; Newton v. State, 48 id., 507; Watson v. State, 82 id., 514.

*E. A. Berry,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Hardin County for the offense of hog heft and his punishment fixed at confinement in the penitentiary for a term of two years.

An inspection of the record discloses that same fails to contain the sentence, if any, imposed upon appellant. In this condition of the record we have no option left but to dismiss the appeal. See Art. 856, Vernon's C. C. P., and authorities cited.

The appeal is dismissed.

*Dismissed.*

### ON REHEARING.

## June 18, 1919.

LATTIMORE, JUDGE.—On a former day of this term this appeal was dismissed because the record contained no sentence, but this defect has now been remedied and the case is before us on its merits.

Franklin Dowdell married Mrs. Freezia, who owned quite a lot of hogs on the range. Mrs. Brackin also owned a large number of hogs on the same or a near-by range. Many other people in that vicinity owned hogs on the same range, and the evidence shows that on that range the hogs were of all colors, sizes and description. On August 29, 1917, appellant Dowdell sold to Habe Watson for $9 two hogs which Watson says were fifteen or sixteen months old; one was a male and the other a "bar;" one was red and the other red and black spotted; one was marked and the other unmarked. But which was marked he did not tell, nor what the mark was. Asked particularly about the ears of the hogs, Watson swore that the ears of the spotted one stood up like a Berkshire, but that one ear of the red one stood up like a Tamworth and the other flopped down like a Duroc. He says also that they were wild hogs. Lum Guynes, a witness for the State, testified that he lived at Saratga about a quarter of a mile from Mrs. Mack Brackin, whom he knew very well; that Mrs. Brackin had a red sow and some shoats which ranged around the settlement, and were well known to him; that about the first of August, 1917, he missed the shoats; that some time in September or October of that year he went over to Habe Watson's place and saw two hogs which he said were about two years old, and were two of the pigs of the red sow of Mrs. Brackin. He described them, as a red hog and a red and black spotted hog, and said they were gentle hogs; that one was marked and the other was not, but did not tell the mark, that he could catch them in his field any time. Asked particularly about the ears, he said he had often noticed their ears, and that the ears of the red one stood up

straight, and those of the red and black spotted one flopped over into his eyes. He further testified that everybody in that part of the country owned hogs, and that they ran out on the range; that one could find a red hog, or a red and black spotted hog out in the woods most anywhere.

Mrs. Brackin, the alleged owner of the stolen hogs, testified that she did not know how many hogs she had; that Zack Crow had charge of her hogs; that she did not give appellant her consent to take any of them; that she did not know what her mark was, but that Julius Brackin did. Zack Crow was not placed on the witness stand. Appellant testified that his wife had a large stock of hogs running on the range, and that he was informed that a bunch of them were running down near Pine Island, and that he borrowed a wagon from Habe Watson, drove down in the Pine Island neighborhood, found a bunch of young hogs following a sow that belonged to his wife, caught seven of them in Mr. Cotton's pen, hauled them home, and sold two of them to Habe Watson. These are substantially the facts in evidence.

The case was one of circumstantial evidence, and the court so instructed the jury. In such case the evidence must exclude, every reasonable hypothesis except that of the guilt of the accused. We notice that Watson does not give the mark of the hogs bought from appellant, which he says were marked, nor does Guynes give the mark of the marked one which he says he saw over at Watson's place. The color of the two hogs was shown to be a very common one in that country. The ears appeared to be relied upon principally as a means of identification, and Guynes and Watson contradict each other as to which hog had the flop and which the up-standing ears. By no witness, either Guynes or any member of the Watson family, was it shown that the hogs seen at Watson's place by Guynes, were the hogs bought from appellant. Where was the Watson family when Guynes came there? Zack Crow, who had charge of Mrs. Brackin's hogs, and presumably was well acquainted with them, was not called upon to describe any of her hogs or to identify any found on Watson's place. It seems strange that Mrs. Brackin should live only a quarter of a mile from the witness Guynes, and she knew absolutely nothing about her hogs, while Guynes knew all about them. There is no evidence at all as to where Watson put the hogs or kept them after buying them from appellant, whether they were in his pasture, on the range or in a pen. The identification of the hogs bought by the witness Watson as the property of Mrs. Brackin and the connection of the hogs seen by Guynes at Watson's place with those bought from appellant, seem to be matters so easy of proof and yet so entirely lacking in this record that we are unwilling to let this conviction stand. These are matters necessary to exclude the reasonable hypothesis that the defendant found the hogs and brought

them home which he believed to belong to his wife, and the State should be required to put this evidence before the jury.

The judgment will be reversed and the cause remanded for another trial.

*Reversed and remanded.*